## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED

MAY - 3 2010

J.T. NOBLIN, CLERK
BY_____DEPUTY

| | | |
|---|---|---|
| MICHEL D. SEVEL, CLIFF BAKER, ROBERT BOSARGE, A.D. HORMANSKI, LESTER JACOBS, J.C. NECAISE, LEONARD PAPANIA, JIMMIE ROWELL, JOHNNY TOWNSEND, ROBERT WOLCOTT, SHIP ISLAND EXCURIONS, INC., WARE USA, L.L.C., d/b/a/ FishingJournals.com, Individually and on behalf of all other similarly situated individuals and entities, and | § § § § § § § § § § | CASE NO. 1:10cv179HSO-JMR<br><br>JURY DEMAND |
| Plaintiffs | § § | |
| versus | § § | |
| BP, PLC., BP PRODUCTS NORTH AMERICA, INC., BP AMERICA, INC., BP EXPLORATION & PRODUCTION INC., TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC., HALLIBURTON ENERGY SERVICES, INC., CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION, SWACO, A DIVISION OF M-I L.L.C., ANADARKO E&P COMPANY L.P., ANADARKO PETROLEUM CORP., AND MOEX OFFSHORE 2007 L.L.C. | § § § § § § § | |
| Defendants | | |

## CLASS ACTION COMPLAINT

**Class Action Complaint - Page 1**

COME NOW Plaintiffs by and through their attorney of record, WILLIAM W. DREHER, JR., and files this complaint as follows:

## INTRODUCTION

### I.

This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages suffered by Plaintiffs and the Class Members as a result of the oil spill that resulted from the explosion, and subsequent sinking of the oil rig Deepwater Horizon (hereinafter "Deepwater Horizon" or "Oil Rig") on April 20,2010, at about 10:00 p.m central, on the outer Continental Shelf off of the Louisiana coast. Subsequently, approximately 1,000 barrels per day of crude oil have been leaking from the oil well upon which the Deepwater Horizon was performing completion operations, and from the pipe connected to it (drill stack). A new leak has since been discovered, and approximately 5000 barrels, or more than 200,000 gallons a day, are pouring out from the debris of the sunken rig.  The fast-moving oil slick, which has grown to 100 miles long by 45 miles wide, is headed towards the Mississippi coast.  It has already caused, and will continue to create profound damage and destruction upon the Gulf of Mexico's and Mississippi's marine environments, coastal environments and estuarine areas.  These areas are used by Plaintiffs and the Class Members for different activities, including fishing and to earn a livelihood.

## PARTIES

## PLAINTIFFS

### II.

Plaintiff, MICHAEL D. SEVEL, is a citizen of Mississippi who resides in Gulfport, Mississippi.  Plaintiff earns his entire livelihood as a commercial fisherman and hunter in the Gulf

of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. $133 l(e)) (the "Coastal Zone") and, in coastal waters of Mississippi.  As a result of the events described above and below, he has suffered damages that are more fully described below.

Plaintiff, CLIFF BAKER, is a citizen of Mississippi who resides in Gulfport, Mississippi. Plaintiff earns his entire livelihood as a commercial fisherman and hunter in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. $133 l(e)) (the "Coastal Zone") and, in coastal waters of Mississippi.  As a result of the events described above and below, he has suffered damages that are more fully described below.

Plaintiff, ROBERT BOSARGE, is a citizen of Mississippi who resides in Long Beach, Mississippi .  Plaintiff earns his entire livelihood as a commercial fisherman and hunter in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. $133 l(e)) (the "Coastal Zone") and, in coastal waters of Mississippi.  As a result of the events described above and below, he has suffered damages that are more fully described below.

Plaintiff, A.D. HORMANSKI, is a citizen of Mississippi who resides in Pass Christian, Mississippi.  Plaintiff earns his entire livelihood as a commercial fisherman and hunter in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. $133 l(e)) (the "Coastal Zone") and, in coastal waters of Mississippi.  As a result of the events described above and below, he has suffered damages that are more fully described below.

Plaintiff, LESTER JACOBS, is a citizen of Mississippi who resides in Pass Christian, Mississippi .  Plaintiff earns his entire livelihood as a commercial fisherman and hunter in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. $133 l(e)) (the "Coastal Zone") and, in coastal waters of Mississippi.  As a result of the events described above and below,

he has suffered damages that are more fully described below.

Plaintiff, J.C. NECAISE, is a citizen of Mississippi  who resides in Pass Christian, Mississippi . Plaintiff earns his entire livelihood as a commercial fisherman and hunter in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. $133 l(e)) (the "Coastal Zone") and, in coastal waters of Mississippi.  As a result of the events described above and below, he has suffered damages that are more fully described below.

Plaintiff, LEONARD PAPANIA, is a citizen of Mississippi  who resides in Wiggins, Mississippi . Plaintiff earns his entire livelihood as a commercial fisherman and hunter in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. $133 l(e)) (the "Coastal Zone") and, in coastal waters of Mississippi.  As a result of the events described above and below, he has suffered damages that are more fully described below.

Plaintiff, JIMMIE ROWELL, is a citizen of Mississippi who resides in Pass Christian, Mississippi.  Plaintiff earns his entire livelihood as a commercial fisherman and hunter in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. $133 l(e)) (the "Coastal Zone") and, in coastal waters of Mississippi.  As a result of the events described above and below, he has suffered damages that are more fully described below.

Plaintiff, JOHNNY TOWNSEND, is a citizen of Mississippi who resides in Coden, Alabama.  Plaintiff earns his entire livelihood as a commercial fisherman and hunter in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. $133 l(e)) (the "Coastal Zone") and, in coastal waters of Mississippi.  As a result of the events described above and below, he has suffered damages that are more fully described below.

Plaintiff, ROBERT WOLCOTT, is a citizen of Mississippi who resides in Gulfport,

Mississippi.  Plaintiff earns his entire livelihood as a commercial fisherman and hunter in the Gulf

of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. $133 l(e)) (the "Coastal

Zone") and, in coastal waters of Mississippi.  As a result of the events described above and below,

he has suffered damages that are more fully described below.

Plaintiff, SHIP ISLAND EXCURIONS, INC., is a domestic corporation of Mississippi, doing

business in Mississippi. Plaintiff conducts a fishing excursion business in the Gulf of Mexico and

in the "coastal zone" (as that term is defined in 43 U.S.C. $133 l(e)) (the "Coastal Zone") and, in

coastal waters of Mississippi.  As a result of the events described above and below, it has suffered

damages that are more fully described below.

Plaintiff, WARE USA, L.L.C., d/b/a/ FishingJournals.com is a domestic corporation of

Louisiana, doing business in Mississippi. Plaintiff depends upon commercial charter boat captains,

operating in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. $133

l(e)) (the "Coastal Zone") and, in coastal waters of Mississippi,  in order to issue business and fishing

reports for its clients. As a result of the events described above and below, it has suffered damages

that are more fully described below.

## **PARTIES**

## **DEFENDANTS**

## **III.**

Defendants herein are:

(a) Transocean, Ltd., ("Transocean, Ltd.") a foreign corporation doing business within this district;

(b) Transocean Offshore Deepwater Drilling, Inc. ("Transocean Offshore"), a foreign corporation

doing business within this district;

(c) Transocean Deepwater, Inc. ("Transocean Deepwater"), a foreign corporation doing business within this district;

(d) BP, PLC ("BP"), a foreign corporation doing business within this district;

(e) BP Products North America, Inc. ("BP Products*) a foreign corporation doing business within this district;

(f) BP America, Inc. ("BP America"), a foreign corporation doing business within this district;

(g) BP Exploration & Production Inc., a foreign corporation doing business within this district;

(h) Halliburton Energy Services, Inc. ("Halliburton"), a foreign corporation doing business within this district; and

(i) Cameron International Corporation M a Cooper-Cameron Corporation ("Cameron'), a foreign corporation doing business within this district.

(j) SWACO, A Division of M-I L.L.C. ("SWACO"), a foreign corporation doing business within this district;

(k) Anadarko E&P Company LP, a foreign corporation doing business within this district;

(l) Anadarko Petroleum Corp., a foreign corporation doing business within this district; and

(m) MOEX Offshore 2007 L.L.C., a foreign corporation doing business within this district.

## JURISDICTION AND VENUE

## IV.

This Court has jurisdiction over this class action pursuant to (1) 28 U.S.C. 5 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and it is a class action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business; (2) 28 U.S.C. 5 1331, because the

claims asserted herein arise under the laws of the United States of America, including the laws of the State of Mississippi which have been declared, pursuant to 43 U.S.C. 55 133 1 (Q(1) and 1333(a)(2), to be the law of the United States for that portion of the outer Continental Shelf from which the oil spill originated; and (3) 43 U.S.C. 5 133 ](I), which extends exclusive Federal jurisdiction to the outer Continental Shelf

Prosecution of this action in this district is proper under 28 U.S.C. 5 1391(a)(2) because all the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL ALLEGATIONS

## V.

1.     Transocean, Ltd., Transocean Offshore and Transocean Deepwater (collectively "Transocean") are the owners and/or operators of the Deepwater Horizon, a semi-submersible mobile drilling rig, which was performing completion operations for BP, BP Products and BP America on the outer Continental Shelf, at the site from which the oil spill now originates, on April 20,2010.

2.     BP, BP Products, BP America, and BP Exploration & Production, Inc., (collectively "BP'S") are the holders of a lease granted by the Minerals Management Service that allows BP to drill for oil and perform oil-production-related operations at the site of the and oil spill, and on April 20, 2010 operated the oil well that is the source of the oil spill.

3.     BP Exploration & Production, Inc., Anadarko E&P Company L.P., Anadarko Petroleum Corp., and MOEX Offshore 2007 L.L.C. are the owners of a lease granted by the Minerals Management Service that allows them to drill for oil and perform oil-production-related operations at the site of oil spill.  On April 20, 2010 they operated the oil well that is the source

of the oil spill.  BP is the designated operator of the lease.  BP, Anadarko E&P Company L.P.,

Anadarko Petroleum Corp., and MOEX Offshore 2007 L.L.C., as lessees, and Transocean, Ltd.,

are jointly solidarily responsible for all activites of the Deepwater Horizon.

   4.  Upon information and belief Cameron manufactured and/or supplied the

Deepwater Horizon's blow-out-preventers ("BOP's"), a giant 450-tonne valve system, that failed

to operate upon the explosion, which should have prevented the oil spill. The BOP's were

defective because they failed to operate as intended.  Crews have failed to be able to activate the

BOP, that should have shut off the oil leak, as soon as the disaster happened.  As such, Cameron

is liable to Plaintiffs and the Class Members pursuant to the Mississippi Products Liability Act in

addition to being liable for its negligence.

   5.  Halliburton was engaged in cementing operations of the well and well cap and,

upon information and belief, improperly and negligently performed these duties, increasing the

pressure at the well and contributing to the lire, explosion and resulting oil spill.

   6.  At all times material hereto, the Deepwater Horizon was owned, manned,

possessed, managed, controlled, chartered and/or operated by Transocean and for BP.

   7.  The fire and explosion on the Deepwater Horizon, its sinking and the resulting oil

spill were caused by the negligence of Defendants, which renders them liable jointly, severally

and *in-solido* to Plaintiffs and the Class Members for all their damages.

   8.  The injuries and damages suffered by Plaintiffs and the Class Members were

caused by Defendants' violations of numerous statutes and regulations, including, but not limited

to, statutes and regulations issued by OSHA and the United States Coast Guard, including the

requirement to test the sub-sea BOP's at regular intervals.

9.    Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiffs, the Class Members,  the Gulf of Mexico's marine and coastal environments and estuarine areas, and the Coastal Zone, where Plaintiffs and the Class Members work and earn a living.

10.    The spilled oil will not simply evaporate off of the surface of the water and is causing dangerous environmental contamination of the Gulf of Mexico and its shorelines, threatening Mississippi's sensitive wetlands and estuarine areas, as well as the shorelines and environmentally sensitive coastal areas of Mississippi, Alabama and Florida.

11.    The oil spill and the contamination have caused and will continue to cause loss of revenue to Plaintiffs who are being prevented from using the Gulf of Mexico, Louisiana's Coastal Zone and Mississippi's Coastal Zone to earn a living, and to support their families.

12.    President Barack Obama has issued a federal disaster declaration for five Mississippi counties.

13.    There are many other potential affects from the oil spill that have not yet become known, and Plaintiffs reserve the right to amend this Complaint once additional information becomes available.

## CLASS DEFINITION

## VI.

14.    Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following Class:

All Mississippi residents who live or work in or derive income from the Mississippi "Coastal Zone," as that term is defined in 43 U.S.C. §1331(e), and who have sustained

any legally cognizable loss and/or damages as a result of the April 20, 2010 fire and explosion which occurred aboard the Deepwater Horizon drilling rig and the oil spill resulting therefrom.

15.    Excluded from the Class are:

a. the officers and directors of any of the Defendants;

b. any judge or judicial officer assigned to this matter and his or her immediate family; and

c. any legal representative, successor, or assign of any excluded persons or entities; and'

d. any class counsel and/or their immediate family members.

## CLASS ACTION ALLEGATIONS

## VII.

**A..    Numerosity of the class**

The proposed Class is so numerous that joinder is impractical. The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court.

**B.    Predominance of Common Questions of Fact and Law**

There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

a. Whether Defendants caused and/or contributed to the fire, explosion and oil spill;

b. Whether Defendants' actions were negligent;

c. Whether the fire, explosion and oil spill have caused environmental or other damage;

and

      d. The amount of damages Plaintiffs and the Class Members should receive in compensation.

## C.     **Typicality**

Plaintiffs and the Class Members have suffered similar harm as a result of Defendants' actions.

## D.     **Adequacy of Representation**

Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have no claims antagonistic to those of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions and maritime and environmental litigation.

## E.     **Superiority**

A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claim of all Class Members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far

fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## VIII.

The various claims asserted in the action are also certifiable under the provisions of Rules 23(b)(l) and/or 23(a)(3) of the Federal Rules of Civil Procedure because:

p.      The prosecution of separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants;

q.      The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests; and

r.      The questions of law or fact common to the Members of the Class predominate over any questions affecting only individual Members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## FIRST CAUSE OF ACTION (NEGLIGENCE)

## IX.

16.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied

herein.

17.     The tire, explosion and resulting oil spill was caused by the concurrent negligence of the Defendants.

18.     Upon information and belief, Plaintiffs aver that the fire, explosion and resulting oil spill was caused by the joint negligence and fault of the Defendants in the following non-exclusive particulars

a. Failing to properly operate the Deepwater Horizon;

b. Operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill;

c. Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

d. Acting in a careless and negligent manner without due regard for the safety of others;

e. Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill;

f. Operating the Deepwater Horizon with untrained and unlicensed personnel;

g. Inadequate and negligent training and hiring of personnel;

h. Failing to take appropriate action to avoid or mitigate the accident;

i. Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

j. Employing untrained or poorly trained employees and failing to properly train their employees;

k. Failing to ascertain that the Deepwater Horizon and its equipment were free from

defects and/or in proper working order;

l. Failure to timely warn;

m. Failure to timely bring the oil release under control;

n. Failure to provide appropriate accident prevent equipment;

o. Failure to observe and read gauges that would have indicated excessive pressures in the

well;

p. Failure to react to danger signs;

q. Providing BOP'S that did not work properly;

r. Conducting well and well cap cementing operations improperly;

s. Acting in a manner that justifies imposition of punitive damages; and

t. Such other acts of negligence and omissions as will be shown at the trial of this matter;

all of which acts are in violation of the laws of Mississippi and Federal law applicable on

the outer Continental Shelf.

19.     In addition, and in the alternative, the fire, explosion, sinking and resulting oil

spill were caused by defective equipment, including the BOP'S, which were in the care, custody,

and control of Defendants and over which the Defendants had *garde*. Defendants knew or should

have known of these defects and Defendants are, therefore, liable for them.

20.     The injuries to Plaintiffs and the Class Members were also caused by or

aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger

associated with their operations.

21.     In addition to the negligent actions described above, and in the alternative thereto,

the injuries and damages suffered by Plaintiffs and the Class Members were caused by the acts and/or omissions of the Defendants that are beyond proof by the Plaintiffs and the Class Members, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the fire, explosion, sinking and oil spill resulted from the negligence of Defendants.  Furthermore, the fire, explosion, sinking and the resulting oil spill would not have occurred had the Defendants exercised the high degree of w e imposed on them and Plaintiffs, therefore, plead the doctrine of *res ipsa loquitar*.

22.     Plaintiffs and the Class Members are entitled to a judgment finding Defendants liable to Plaintiffs and the Class Members for damages suffered as a result of Defendants' negligence and awarding Plaintiffs and the Class Members adequate compensation therefor in amounts determined by the trier of fact.

23.     Upon information and belief, Transocean, Haliburton, SWACO and/or BP's failure to properly report and/or maintain records, and/or their intentional manipulation and fabrication of equipment inspections, including crew inspections was a substantial contributing factor to the explosion and resulting damages that are the subject of this litigation.

24.     The incidents described above that caused damage to Plaintiffs and the Class Members were a proximate result of the negligence and fault of Defendants, Transocean, BP, Anadarko E&P Company, L.P., Haliburton, SWACO, and MOEX Offshore 2007 L.L.C., through their agents, servants and/or employees.

**SECOND CAUSE OF ACTION**
**TRESPASS BY ALL DEFENDANTS**

**X.**

25.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallage each and every allegation set forth above with the same force and effect as if copied herein.

26.     Defendants' negligent acts and omissions have resulted and continue to result in the direct and physical invasion of Plaintiffs' and Class Members' persons and properties, by the toxic and/or harmful substances that have contaminated their persons, properties, buildings, businesses and the surrounding surface and subsurface areas.

27.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs and Class Members have suffered losses in the form of, but not limited to emotional distress, loss of income, the creation of conditions harmful to human health and the environment, and loss of the beneficial use, enjoyment, and exclusive possession of their property, for which they are entitled to be compensated.

### THIRD CAUSE OF ACTION
### NUISANCE CREATED BY ALL DEFENDANTS

### XI.

28.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallage each and every allegation set forth above with the same force and effect as if copied herein.

29.     Defendants' acts and omissions with respect to the explosions, fire and release of crude oil  and toxic substances have caused and continue to cause a material, substantial and unreasonable interference with Plaintiffs' and other Class Members' use and enjoyment of their properties and businesses, and have materially diminished and continue to diminish the value thereof.

**Class Action Complaint - Page 16**

30.     Defendants' material, substantial, and unreasonable interference with the use and enjoyment of Plaintiffs' and other Class Members' properties and businesses, and the continuing material, substantial and unreasonable interference with such use and enjoyment constitute a continuing private nuisance.

31.     Defendants' creation and continuing creation of private nuisance proximately caused and  continues to proximately cause damage to Plaintiffs and other Class Members in the form of emotional distress, and property damage of a type special to members of the class.

32.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs and Class Members have suffered losses in the form of, but not limited to, emotional distress, loss of income, the creation of conditions that are harmful to human health and the environment, and loss of the beneficial use, enjoyment and exclusive possession of their properties and businesses for which they are entitled to be compensated.

## FOURTH CAUSE OF ACTION
## (OIL POLLUTION ACT)

## XII.

33.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully copied herein.

34.     The Oil Pollution Act imposes liability upon a "responsible party for a... facility from which oil is discharged ... into or upon navigable waters or adjoining shorelines" for the damages that "result from such incident." 33 U.S.C. Sec. 2702(a).

35.     Section 2702(b)(2)(C) provides for the recovery o f " [d]amages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses

natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources."

36.     Section 2702(b)(2)(B) provides for the recovery of "[d]amages for injury to or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property."

37.     The Coast Guard has named BP as the responsible party. Therefore, BP is liable pursuant to Section 2702 for all the damages that resulted in the oil spill.

38.     As a result of the oil spill, Plaintiffs and the Class Members have not been able to use natural resources, air and water, and potentially wetlands and other areas and spaces that have and/or may become contaminated by the spilled oil, for their subsistence, and they are entitled to recover from BP for such damages in amounts to be determined by the trier of fact.

39.     As a result of the oil spill, Plaintiffs and the Class Members have suffered injury to and economic losses from the destruction of real and personal property leased by them that has and/or may become contaminated by the spilled oil, and they are entitled to recover from BP for such damages in amounts to be determined by the trier of fact.

40.     Section 2702(b)(2)(E) provides for the recovery of "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

41.     As a result of the oil spill, Plaintiffs and the Class Members have suffered the type of damages that may be recovered pursuant to Section 2702(b)(2)(E), and they demand compensation therefore from BP in amounts to be determined by the trier of fact.

42.     Pleading further, Plaintiffs, on behalf of themselves and the Class Members allege

that the incident was proximately caused by the (a) gross negligence and/or willful misconduct of Defendants, or (b) the violation of an applicable Federal safety, construction, or operating regulation by the responsible party, an agent or employee of the responsible party, or a person acting pursuant to a contractual relationship with the responsible party.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class Members demand judgment against Defendants, jointly, severally and *in solido*, as follows:

a. An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein; appointing Plaintiffs as Class Representatives; and appointing undersigned counsel as counsel for the Class;

b. Economic and compensatory damages in amounts to be determined at trial, but not less than the $5,000,000.00 required by the Class Action Fairness Act which establishes one of this Court's bases of jurisdiction to hear this case;

c. Punitive damages;

d. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

e. Attorney's fees and costs of litigation;

f. Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate; and

g. A trial by jury as to all Defendants.

Respectfully Submitted by:

**DREHER LAW FIRM, P.A.**

BY: _____

William W. Dreher, Jr. (MSB# 10117)

P.O. Box 968

2224 - 24th Avenue

Gulfport, Mississippi 39502

Tel. 228-822-2222

Fax 228-822-2626


-and-

**BARON & BUDD, P.C.**

Tiffany Newlin (MSB# 100617)

3102 Oak Lawn Avenue, Suite 1100

Dallas, Texas 75219-4281

(214) 521-3605

(214) 520-1181 (Fax)


- and -

**F. GERALD MAPLES, P.A.**

F. Gerald Maples (MS B #1860)

Carl D. "Todd" Campbell, III (MS B #102856)

365 Canal Street, Suite 2650

New Orleans, LA  70130

Telephone:  (504) 569-8732

Facsimile:  (504) 525-6932

- and -

**MORGAN & MORGAN, P.A.**

Omar L. Nelson, Esq. (MSB#100105)

188 East Capitol Street, Suite 777

Jackson, Mississippi 39201

Telephone: (601) 949-3388

Facsimile: (601) 949-3399